**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

RICHARD H. BOULET and CELENE BROOKE BOULET

Plaintiffs

v.

BANGOR SECURITIES, INC, and GARY LEO HOBBS

Defendants.

Civil Action
Docket No. 2:04-cv-00009-DBH

**BANGOR SECURITIES, INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STAY ACTION AND COMPEL ARBITRATION WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Bangor Securities, Inc., f/k/a Livada Securities, Inc. ("Bangor Securities"), hereby moves to dismiss the above-captioned action or, alternatively, moves to stay the action and compel its arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (1999 & Supp. 2003). The grounds for this motion are set forth more fully below.

**Introduction**

On January 14, 2004, the Plaintiffs, Richard H. Boulet ("Mr. Boulet") and Celene Brooke Boulet ("Mrs. Boulet") (collectively, the "Boulets") filed the above-captioned Complaint, which alleges violations of state and federal securities laws and several common law claims, all arising out of the Defendants' alleged actions with respect to their brokerage of securities transactions for the Boulets. By filing this action, however, the Boulets clearly are attempting to circumvent the terms of their brokerage accounts, by which they have agreed explicitly to arbitrate all claims they may have against the Defendants relating to the transactions at issue in this case. This effort by the

Boulets runs directly counter to their contractual obligations, as well as the strong federal policy favoring arbitration. Accordingly, Bangor Securities moves for an order dismissing this action or, alternatively, an order staying this action and compelling the parties to proceed directly to arbitration, as per their explicit contractual commitments.

**Facts**

According to the allegations of the Boulets, Bangor Securities is the successor of Livada Securities, Inc. ("Livada Securities") and has been a registered broker-dealer since 1974. Complaint ¶ 8. Bangor Securities, at all times pertinent to the Complaint, has been a securities broker that purchases and sells securities and administers securities accounts on behalf of its customers, including the Boulets. Complaint ¶ 11. Defendant Gary Hobbs ("Mr. Hobbs") acted as a Registered Representative of Bangor Securities. Complaint ¶ 5. As alleged by the Boulets, at all times pertinent to the Complaint, Mr. Hobbs was acting under the control, management and supervision of Bangor Securities. Complaint ¶¶ 6, 13, 51-52.

Sometime in the late 1980s, Mr. Boulet began using the services of Mr. Hobbs for the purpose of investing in securities. Complaint ¶¶ 19-25, 28. At that time, Mr. Hobbs was working for a broker-dealer unrelated to Bangor Securities or its predecessor, Livada Securities. Complaint ¶¶ 19, 21. In 1991, Mr. Hobbs began working for Livada Securities; accordingly, at that time, Mr. Boulet transferred his brokerage accounts to Livada Securities. Complaint ¶ 29. Sometime in 1997, Mr. Boulet opened an account with Livada Securities for his wife, Mrs. Boulet. Complaint ¶ 32.

On December 23, 1998, the Boulets executed a "Client's Margin Agreement" (the "Agreement") Affidavit of Gregg Piasio, dated March 5, 2004 ("Piasio Affidavit"), at ¶ 2, and Exhibit 1 thereto. The Agreement, which was on a form provided to Bangor Securities by Wexford

Clearing Services Corporation ("Wexford"), was provided to the Boulets by Bangor Securities, which was indicated on the Agreement to be the broker-dealer branch for the Boulets' accounts. Piasio Affidavit ¶ 3, and Exhibit 1 to Piasio Affidavit at 2. Wexford acted as a so-called "clearing firm" for Livada Securities. Piasio Affidavit ¶ 7. Through the use of this arrangement, Livada Securities was able to place orders to buy and sell securities through Wexford, which performed centralized accounting and trade execution functions for accounts serviced by Livada Securities for its clients. Piasio Affidavit ¶ 7.[1]

In the Agreement, the Boulets acknowledged that its terms applied with equal force to all of their brokerage accounts "which I have opened or open in the future," relating to the purchase and sale of securities. Exhibit 1 to Piasio Affidavit at Section 1. The Agreement provides also that it shall be governed by the laws of New York. Exhibit 1 to Piasio Affidavit at Section 14.

Section 14 of the Agreement contains an arbitration provision under which the Boulets agreed to resolve any disputes through binding arbitration. Exhibit 1 to Piasio Affidavit at Section 14. Specifically, Section 14 states the following:

> - Arbitration is final and binding on the parties.
> - The parties are waiving their right to seek remedies in court, including the right to jury trial.
>
> . . . .
>
> The undersigned [i.e. the Boulets] agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

[1] On September 1, 1999, Plaintiff Celene Brooke Boulet also executed a "Client's Margin Agreement," which is substantially identical to the Client's Margin Agreement executed by she and her husband, Mr. Boulet, on December 23, 1998. Piasio Affidavit ¶¶ 4-6.

> . . . . Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof . . . shall be settled by arbitration . . . .

Exhibit 1 to Piasio Affidavit at Section 14.

Section 16 of the Agreement also expressly states that the Boulets' broker, Bangor Securities, is a third-party beneficiary of the Agreement:

> I agree that my broker is a third-party beneficiary of this Agreement and that the terms and conditions hereof, *including the arbitration provision*, shall be applicable to *all matters* between or among myself and either my broker and/or Wexford Clearing Services Corporation.

Exhibit 1 to Piasio Affidavit at Section 16 (emphasis added). Bangor Securities, which provided the Agreement to the Boulets, was their broker when the Agreement was executed. Piasio Affidavit ¶ 3, and Exhibit 1 to Piasio Affidavit at 2; Complaint ¶ 11.

In their Complaint, the Boulets allege various causes of action arising out of the handling of their accounts by Bangor Securities and Mr. Hobbs. Among other things, the Boulets allege that Mr. Hobbs disregarded their instructions to sell certain securities (Complaint ¶ 33), failed to disclose to them the purchases of other securities (Complaint ¶ 34), provided to them false assurances that their investments would earn money (Complaint ¶¶ 35-36), and invested their money in unsuitable investments (Complaint ¶¶37, 42, 44). The Boulets also allege that Mr. Hobbs was acting as an agent of Bangor Securities, which was responsible for supervising his alleged offending activities with respect to the Boulets' accounts. Complaint ¶¶ 51-52.

Based on their factual allegations, the Boulets allege the existence of statutory causes of action based on violations of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78o, et seq.) (Count I), the Electronic Funds Transfer Act (15 U.S.C. § 1693, et seq.) (Count II), the Revised Maine Securities Act (32 M.R.S.A. §§ 10101, et seq.) (Count III) and the Maine Unfair Trade

Practices Act (5 M.R.S.A. § 205, et seq.) (Count IV). In addition, the Boulets allege the existence of common law causes of action premised on negligence (Count V), negligent misrepresentation (Count VI), breach of fiduciary duty (Count VII), fraud (Count VIII), vicarious liability (Count IX) and punitive damages (Count XI). In addition, Mrs. Boulet alleges the existence of a common law cause of action premised on loss of consortium (Count X) based on "the conduct of the Defendants." Complaint ¶ 109.

## Argument

### I. THE AGREEMENT BINDS THE PARTIES TO RESOLVE THE BOULETS' CLAIMS THROUGH ARBITRATION

### A. Governing Law

The FAA requires a federal court in which a suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration, provided that the court is satisfied that the issue is in fact referable to arbitration under the agreement. 9 U.S.C. § 3. The FAA further requires a court so requested to order the parties to proceed to arbitration where the parties have agreed to resolve their disputes through arbitration. 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400 (1967).[2]

In order to apply the provisions of the FAA, a federal court must have jurisdiction over the suit involved in the underlying dispute. *Dean Witter Reynolds, Inc., et al. v. Sanchez Espada, et al.*, 959 F.Supp. 73, 76 (D. Puerto Rico 1997) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983)). In the instant case, this Court has federal question jurisdiction with respect to the Boulets' claims premised on the Securities Exchange Act and Electronic Funds

[2] Maine's Uniform Arbitration Act also provides that a court is to compel arbitration when a party demonstrates that an enforceable agreement to arbitrate exists. 14 M.R.S.A. §§ 5927, 5928 (2003). Similarly, New York law requires that parties be compelled to arbitrate when a valid agreement to arbitrate exists between the parties. N.Y. C.P.L.R. § 7503. Therefore, the analysis with respect to the question of arbitration is the same under any possibly applicable law.

Transfer Act. *See* 28 U.S.C. § 1331. *See also Dean Witter Reynolds, Inc., et al. v. Sanchez Espada, et al.*, 959 F.Supp. at 76. In addition, with respect to the Boulets' state law claims, these are so related to the federal law claims that they form part of the same case or controversy, thus making supplemental jurisdiction appropriate pursuant to 28 U.S.C. § 1367.[3]

### B. Under the FAA, the Present Action Must be Dismissed or, Alternatively, Stayed Pending Arbitration

As set out above, Section 3 of the FAA states that where a suit or proceeding brought in a court is referable to arbitration pursuant to a written agreement by the parties, the court upon being satisfied that the claims are referable should stay the court action pending arbitration. 9 U.S.C. § 3. *See also Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d 50, 52 (D. Me. 2002). In addition, Section 4 of the FAA states, in part, that the Court shall issue an order directing the parties to arbitrate their dispute as required by the parties' agreement to arbitrate. 9 U.S.C. § 4. *See also Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 53. Moreover, where a court determines that all claims raised by a plaintiff are subject to arbitration, the court may dismiss the entire action, rather than staying it. *Bangor Hydro-Electric Co. v. New England Telephone and Telegraph Co.*, 62 F.Supp.2d 152, 161 (D. Me. 1999) (*citing Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n. 21 (1st Cir. 1998) and *Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F.Supp. 750, 757-58 (D. P.R. 1986)).

Thus, the sole question upon which resolution of this Motion turns is whether there is a binding agreement under which the present dispute is "referable to arbitration." 9 U.S.C. § 3. In

---

[3] In addition, the federal courts are bound to apply the FAA to contracts "involving commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. at 504-06. In this case, the Agreement is a contract involving the purchase and sale of securities, rendering the Agreement one "involving commerce" under any measure. *See id.* at 406. The nature of securities trading, and the fact that the Margin Agreement is a contract between a resident of Maine and, in part, a New York corporation demonstrates that the Agreement involves interstate transactions, subject matter that is "incontestabl[y]" governed by the FAA. *See id.* at 405.

this regard, the Court's consideration of a motion to compel arbitration involves the determination of (1) whether there is an agreement to arbitrate, (2) whether the dispute in question falls within the scope of that arbitration agreement, and (3) whether the party seeking arbitration has waived the right to compel arbitration. *Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 52 (citations omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 53 (*quoting Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528 (1st Cir. 1985)). "All doubts concerning the scope of arbitrable issues are resolved in favor of arbitration." *Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 53 (citation omitted). A motion to compel arbitration will be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986) (citations omitted); *Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 53 (*quoting Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d at 528)).

The arbitration agreement at issue in this case clearly satisfies the criteria for dismissal of this action or, alternatively, for its stay by this Court pending arbitration of the Boulets' claims.

**1. The Boulets Entered Into an Agreement to Arbitrate Their Claims**

A court must determine whether parties have entered into an arbitration agreement through reference to principles of state contract law. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). New York law, which governs the Agreement, dictates that unambiguous contract terms are to be interpreted according to their plain meaning without resort to extrinsic evidence. *Hendrix v. Hendrix,* 768 N.Y.S.2d 840, 840 (N.Y. App. Div. 2003). A contract is unambiguous when it is susceptible to only one reasonable interpretation. *Jana-Rock Constr., Inc. v. City of*

*Rome,* 738 N.Y.S.2d 263, 263 (N.Y. App. Div. 2001). The question of whether a contract is ambiguous is a question of law, as is the interpretation of unambiguous contracts. *Hendrix,* 768 N.Y.S.2d at 840.

The Agreement provides that ". . . all controversies which may arise between us concerning any transaction or the . . . performance or breach of this or any other agreement between us . . . shall be determined by arbitration." Exhibit 1 to Piasio Affidavit at Section 14. In addition, the Agreement provides that "any controversy arising out of or relating to [the Boulets'] account . . . shall be settled by arbitration." Exhibit 1 to Piasio Affidavit at Section 14. These provisions are susceptible to only one interpretation: The parties to the Agreement agreed to resolve disputes relating to the Boulets' accounts through arbitration. Accordingly, the instant action is referable to arbitration under the agreement so long as it falls within the scope of the arbitration provision, and so long as the agreement can be enforced by Bangor Securities.

**2. This Dispute is Within the Scope of the Arbitration Agreement**

Arbitration agreements are enforceable with respect to any dispute that falls within the scope of the agreement. *See First Options of Chicago, Inc.,* 514 U.S. at 943. As set forth above, the question as to the scope of an arbitration agreement is to be resolved in light of federal policy that strongly favors arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. at 24; *Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 53 ("All doubts concerning the scope of arbitrable issues are resolved in favor of arbitration") (citation omitted). When the parties have entered into an arbitration agreement, a court should set forth an order compelling the parties to proceed to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. at 650

(citations omitted); *Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 53 (*quoting Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d at 528)).[4] The scope of arbitration provisions covering "all disputes" under an agreement includes all "contract-generated or contract-related disputes." *Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir. 1975).

Federal case law demonstrates the broad scope of agreements to arbitrate "any" or "all" disputes arising under a contract. For example, the parties in *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455 (10th Cir. 1995), entered into six separate joint venture agreements. *Id.* at 1458. Five of the six agreements provided that "any matter in dispute" was to be settled by arbitration. *Id.* The district court held that the scope of the arbitration provisions extended to disputes relating to the sixth joint venture agreement, which was silent with respect to arbitration, because of the breadth of the "any matter in dispute" language, and because the sixth agreement was related to the subject matter of the other agreements. *Id.* at 1462. The Tenth Circuit Court of Appeals affirmed, finding no "positive assurance" that the arbitration clauses were not susceptible to the district court's finding. *Id.*

As noted above, this dispute involves a controversy regarding the Defendants' alleged actions with respect to their brokerage of securities transactions for the Boulets in their accounts. All of the claims set forth in the Complaint unequivocally arise out of and relate to the Boulets' accounts, and are based on controversies arising out of or relating to transactions undertaken by the Defendants with respect to those accounts. As noted above, the arbitration provisions contained in the Agreement state that "all controversies" concerning breach of the Agreement or any other

---

4 Maine law similarly provides that a dispute is to be found arbitrable absent a "positive assurance" that the agreement is not susceptible to an interpretation to the contrary, and also provides that doubts are to be resolved in favor of arbitration. *Granger Northern, Inc. v. Cianchette,* 572 A.2d 136, 138 (Me. 1990) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)).

agreement between the parties are to be resolved through arbitration. Exhibit 1 to Piasio Affidavit at Section 14. The arbitration provisions also expressly apply to "[a]ny controversy arising out of or relating to" the Boulets' accounts or to transactions undertaken "with or for" the Boulets, including any transactions with regard to accounts they had opened in the past and accounts they would open in the future.

At a minimum, this establishes that there is no positive assurance that the arbitration provisions are not susceptible to a finding that all of the claims raised in this dispute fall within the scope of those provisions. *See AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. at 650. For this reason, all of the Boulets' claims clearly fall within the scope of the arbitration provisions contained in the Agreement.

**3. Bangor Securities Can Enforce the Agreement's Arbitration Provisions**

New York law permits a third-party beneficiary to enforce the terms of a contract where the contract expresses an intent to benefit the third party. *Port Chester Elec. Constr. Corp. v. Atlas,* 389 N.Y.S.2d 327, 330 (N.Y. 1976). *See Miller v. Rochester Firefighters Ass'n, Inc.,* 621 N.Y.S.2d 473, 476 n.5 (N.Y. City Court 1994) (citing *Port Chester Elec. Constr. Corp. v. Atlas,* 389 N.Y.S.2d at 330). An express provision identifying a third-party as an intended third-party beneficiary reveals an intent to confer a benefit so as to permit the third-party to enforce the contract. *See Conklin v. City of Saratoga,* 699 N.Y.S.2d 820, 821 (N.Y. App. Div. 1999).

Paragraph 16 of the Agreement expressly states that Mr. Boulet's broker is a third-party beneficiary to the contract, and further expressly states that the arbitration provisions of the Agreement are applicable to "all matters" between Mr. Boulet and his broker and to all accounts he had opened or would open in the future. Bangor Securities was Mr. Boulet's broker at the time the Agreement was executed. The Agreement, therefore, reveals a clear intent by the parties to give

Bangor Securities the right to enforce the Agreement's terms, including the arbitration provisions set forth therein. Those provisions accordingly should be enforced by dismissing this action, *see Bangor Hydro-Electric Co. v. New England Telephone and Telegraph Co.*, 62 F.Supp. at 161, or, alternatively, by staying this action and compelling the parties to proceed to arbitration.

Finally, it is clear that Bangor Securities has not taken any actions that might be considered a waiver of its right to invoke the arbitration provisions of the Agreement. *See Maine School Admin. Dist. Number 68 v. Johnson Controls, Inc.*, 222 F.Supp.2d at 52. Indeed, aside from filing this motion, Bangor Securities has not yet engaged in any participation in the Boulets' instant litigation in this Court.

**Conclusion**

WHEREFORE, for all of the foregoing reasons, Bangor Securities respectfully requests that the Court grant its Motion to dismiss the Plaintiffs' Complaint or, alternatively, stay this action and compel the Plaintiffs to resolve their claims through arbitration.

Dated at Portland, Maine this 8th day of March, 2004.

/s/ Daniel J. Mitchell
Daniel J. Mitchell, Maine Bar No. 8322
Attorney for Defendant Bangor Securities, Inc.

Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029
207-774-1200

CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2004, I electronically filed the Motion of Defendant Bangor Securities, Inc. to Dismiss, or, alternatively, to Stay Action and Compel Arbitration with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the

following:  Daniel G. Lilley, Daniel G. Lilley Law Offices, P.A., 39 Portland Pier, P.O. Box 4803, Portland, ME 04112.

            /s/ Daniel J. Mitchell
            Daniel J. Mitchell, Esq.