UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| RICHARD H. BOULET and | ) |
| CELENE BROOKE BOULET | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Docket No. 2:04-CV-00009-DBH |
| BANGOR SECURITIES, INC., a Maine | ) |
| Corporation, and | ) |
| GARY LEO HOBBS, individually and in | ) |
| his capacity as an employee of Bangor | ) |
| Securities, Inc. | ) |
| | ) |
| Defendants | ) |

**PLAINTIFFS' OPPOSITION TO BANGOR SECURITIES, INC.'S MOTION TO DISMISS/STAY ACTION AND COMPEL ARBITRATION WITH INCORPORATED MEMORANDUM OF LAW**

NOW COME the Plaintiffs, Richard H. Boulet and Celene Brooke Boulet, by and through counsel, Daniel G. Lilley Law Offices, P.A., in Opposition to Defendant Bangor Securities Inc.'s ("Bangor Securities") Motion to Dismiss the above-captioned Complaint and/or stay the action and compel arbitration.

**FACTS**

Plaintiffs Richard Boulet and Celene Boulet are unsophisticated investors who lack knowledge in business matters, the handling and investing of money and lack of knowledge of matters relating in the stock market. *Complaint, ¶ 3*. Both Defendants Bangor Securities and Gary Lee Hobbs (Hobbs) are registered with the National Association of Securities Dealers Corp. (NASD) to sell securities. *Id ¶¶ 5, 8*. At or

1

around 1986, Hobbs began managing Mr. Boulet's investment accounts. Mr. Boulet put Hobbs on notice that he was an unsophisticated investor and that he would be relying on Hobbs exclusively to act on behalf of Mr. Boulet's financial best interests. *Id ¶¶ 22, 95, 96*. Mr. Boulet is mentally disabled and Hobbs knew of Mr. Boulet's disability. *Id ¶¶ 26, 27, 50*. Hobbs violated Plaintiffs' trust and confidence and by means of fraud, deception, account churning, improperly trading on margin and otherwise taking advantage of Plaintiffs trust, confidence and lack of sophistication, lost or took all of Plaintiffs' retirement savings of approximately $820,000.00. *Id ¶¶ 49, 39, 42*.

Mr. Boulet maintained two accounts with Defendants, account numbers ending in 8286 and 2911. *Id ¶ 45*. Defendants have failed to produce copies of the account information or other information relating the accounts. *Id ¶¶ 45-47*. Defendants failed to obtain information required by NASD Rule 3110 for Boulet's accounts and otherwise failed to adhere to their own policies and standard industry practices while handling Plaintiffs' accounts. *Id ¶¶ 58-84*. Defendants failed to supply Plaintiffs with accurate information relating to the handling and management of their investment accounts. *Id ¶¶ 89-91; 100-101*.

## LAW AND ARGUMENT

### A. The Legal Standards.

Defendants have invoked Rule 12(b)(1) & 12(b)(6) of the Federal Rules of Civil Procedure and requests that this court dismiss Plaintiffs' entire case and/or stay the case by means of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16 (1999 & Supp. 2003). A motion to dismiss is designed to test the legal sufficiency of a complaint. While deciding a motion to dismiss, the court accepts all well-pleaded facts as true, indulging

every reasonable inference helpful to the plaintiff's cause. Garita Hotel Ltd. Partnership v. Pance Federal Bank, *F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992). A motion to dismiss may only be granted if the plaintiff fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory. Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1998). Plaintiffs' Complaint establishes this court's jurisdiction over the entire case and alleges sufficient facts to support all of the legal claims asserted.

The threshold issue before this court is whether or not Bangor Securities and the Boulets ("the parties") agreed to arbitrate their differences and waive their right to a trial by jury. Arbitration is a matter of contract and a party cannot be required to submit to arbitration of a dispute which he/she has not agreed to submit. Intergen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003), citing United Steelworkers of America v. Warrior and Gulf Navigation Co., 80 S.Ct. 1347, 1352 (1960). This is a matter of contract interpretation for this court or a Maine jury to decide. *See* 9 U.S.C. § 4 (2000)( the arbitration statute specifically commands that in non-admiralty cases, a jury must be used to decide the validity of the agreement if it is disputed);  Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129-30 (2d Cir.1997); Coady v. Ashcraft & Gerel, 223 F.3d 1 (1st Cir. 2000). Whether or not the parties agreed to arbitrate the pending disputes pursuant to an arbitration provision contained within the "Client Margin Agreements" should be determined by accepted principles of contract interpretation. Intergen N.V. v. Grina, 344 F.3d at 143; Stone v. Doerge, 328 F.3d 343, 345 (7th Cir 2003)(nothing in the FAA overrides normal rules of contractual interpretation). [1]

---

[1] Defendants erroneously argue that the Margin Agreement must be interpreted according to principles of New York contract law.

3

It is also important to note that until recently, for disputes involving securities, arbitration was forbidden as a matter of federal policy. Stone v. Doerge, 328 F.3d 343, 345 (7th Cir 2003) citing Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). When Wilko was overruled, the Justices analogized arbitration arreements to forum-selection clauses. Id., citing Rodriguez v. Shearson/American Express, Inc., 490 U.S. 477, 482-83, 109 S.Ct. 1917, 104 L.Ed. 526 (1989). "As there is no thumb on the scale in favor of one judicial forum over another, there is no preference for arbitration over adjudication either." *Id* at 346. The task at hand in a case such as this is to implement the parties' preferences between judicial and arbitral forums. *Id*.

### B. The Margin Agreement's Arbitration Clause Does Not Apply to Plaintiffs' Transactions with Bangor Securities, Inc.

The plain language of the "Client's Margin Agreement" contains no evidence that Plaintiffs ever agreed to arbitrate controversies between themselves and Bangor Securities. As an initial matter, Plaintiffs did not even know that their accounts were being traded on margin or what margin trading even is. *Complaint ¶42, ¶101(g)*. The margin agreement contains no reference to Bangor Securities. The only party, aside from Plaintiffs, to the agreement is Wexford Clearing Services Corporation ("Wexford"), located in New York, NY. See *Defendant's Exhibit 1&2,* p.1, ¶7, *"Wexford Clearing Services Corp., receives fees. . . ," ". . . protection is provided through insurance purchased by Wexford Clearing Services Corp. . . .,", p.2 ¶14, ". . . shall be settled by arbitration before either the New York Stock Exchange Inc. or the National Association of Securities Dealers, Inc. or any other self-regulatory organization of which Wexford Clearing Services is a member. . ."*. The language of the agreement reveals that it is between Plaintiffs and Wexford. There is absolutely nothing within the arbitration clause

4

contained within the Margin Agreement that put Plaintiffs on notice that they would be required to submit to arbitration of disputes between themselves and Bangor Securities. Under these circumstances, it cannot fairly be said that the agreement represents Plaintiffs' assent to arbitrate with anyone other than Wexford on issues relating to Wexford's performance of its duties and obligations as stated in the agreement to act as a clearing agent for Plaintiffs' margin accounts.

### 1. **Bangor is Not a Third-Party Beneficiary to Wexford and Plaintiffs' Agreements.**

Without a provision explicitly stating that Bangor Securities was a party to the contract, one cannot conclude that it was Plaintiffs' intention to extend the arbitration language to them. Bangor Securities anticipates this defense and asserts that paragraph 16 of the Margin Agreement applies to confer third-party beneficiary status to them. The plain language of that paragraph does not explicitly name Bangor Securities, but refers to "my broker." The broker in this case is Gary Hobbs. *Complaint ¶21*. Defendant Hobbs has not asserted any rights under the Margin Agreement. Neither Defendant Hobbs nor Bangor Securities are signatories to the Margin Agreement. *See Defendant's Exhibits 1 and 2*.

The law requires "special clarity" to support a finding that the contracting parties intended to confer a benefit on a third-party. InterGen N.V v. Grina, 344 F.3d 134, 146 (C.A.1 Mass 2003) citing McCarthy v. Azure, 22 F.3d 351, 362 (1st Cir. 1994). "Courts should be extremely cautious about forcing arbitration in 'situations in which the identity of the parties who have agreed to arbitrate is unclear.'" Intergen, 344 F.3d at 143. (internal citations omitted). See EI Dupont de Numours & Co., v. Rhone Poulee Fiber and Resin Intermediates, 269 F.3d 187, 196-97 (3rd Cir 2001)(explaining that a parent

5

company not explicitly named in an agreement was not an intended third-party beneficiary); Intergen, 344 F.3d at 147 (failure to specifically assign nonsignatory contract rights by name does not comply with the "rigorous requirements" necessary to establish the nonsignatory as a third –party beneficiary). Defendants have simply failed to establish that the Margin Agreements contain the requisite clarity that the Boulets must arbitrate their disputes with Bangor Securities as opposed to Wexford.

In the case at bar it is not at all clear that Plaintiffs signed a Margin Account Agreement binding themselves to an arbitration clause for the benefit of Bangor Securities. It is undisputed that there is nothing within the four corners of the document that explicitly refers to Bangor Securities. Bangor Securities account information is in code and Mr. Piasio's Affidavit is silent as to when Bangor Securities "inserted" its own account information into the agreements. *Affidavit of Gregg M. Piasio, ¶¶ 3&5*.

## 2. **The Margin Agreement Terms are Irrelevant to Plaintiffs' Claims.**

Defendants have failed to establish that the Margin Agreements between Wexford and Plaintiffs are so broad as to encompass all of the claims Plaintiffs have alleged. Federal courts, generally, "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory are seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." InterGen N.V v. Grina, 344 F.3d at 146. In this case the agreement is for margin accounts in which Wexford Clearing Services Corporation acted as the "middle man" executing trades on behalf of Bangor Securities and its customers. *Affidavit of Gregg M. Piaso, ¶7*. Wexford is not a party to this lawsuit. Defendant's affidavit states that Wexford was a "middle man" but does not affirmatively establish that it was the "middle man" for the

6

trades in dispute. There is no evidence that the Wexford was involved in any of the disputed trades between Plaintiffs and Bangor Securities. Nor can it be said that the terms of the Client Margin Agreements are intertwined with the claims contained within Plaintiffs' Complaint.

Only two (2) paragraphs out of Plaintiffs' one hundred and thirteen (13) count Complaint speak to issues relating to Plaintiff Boulet's margin account. *See Complaint ¶42 ("During the period from 1993 through 2002, Defendant Hobbs used margin to purchase securities for Plaintiff Richard Boulet's account without documenting any information concerning the suitability of margin for Plaintiff Richard Boulet and without ascertaining whether Plaintiff Richard Boulet understood the ramifications of margin, resulting in interest costs to Plaintiff Richard Boulet in excess of approximately $35,000"); ¶ 101(g) ("Defendants knowingly or recklessly communicated false information/ failed to provide material information to Plaintiffs, including but not limited to. . . disclose Plaintiff Richard Boulet's account was being traded on margin or to disclose the risks associated with margin trading.*). The use of fine print in Wexford's boilerplate Margin Agreement to subsume and compel arbitration between Plaintiffs and Bangor Securities is unwarranted given the lack of clarity that Plaintiffs ever intended to arbitrate their pending disputes with Bangor Securities or that their dispute emanates from violations of the margin agreements.

### 3. **The Margin Agreement is Not Clear.**

Plaintiffs' position on the interpretation of the Client Margin Agreement is well supported. At least one Circuit, carefully interpreting a contract between an investor and a clearing broker (like Wexford), has held that an agreement to arbitrate between the

investor and the clearing broker does not encompass disputes between an investor and the broker that utilized the services of the clearing agent unless the clearing broker is a party to the dispute. Stone v. Doerge, 328 F.3d 343 (7th Cir. 3002). In Stone, the investor, a trustee, asserted fraud claims against his broker –dealer. Id. at 344. Bear Stearns Securities Corp., ("Bear Stearns") acted as the clearing broker or "middle man" in some of the transactions between the plaintiff investor and defendant broker-dealer. Id. The defendant broker-dealer moved to stay the action and compel arbitration on the basis that the investor had signed an arbitration agreement with Bear Sterns which committed the parties to arbitrate any "controversies arising between [the trusts] and any Bear Stearns entity or any broker for which Bear Stearns acts as a clearing agent;" a separate clause makes entities such as the defendant broker a third-party beneficiary of the agreement. Id.

The Stone court concluded that the arbitration language was ambiguous and the only reasonable interpretation of the third-party beneficiary language was to ensure that *if* arbitration occurs between Bear Stearns and one of its customers, then every other party to the dispute also will participate, so one forum can provide complete relief. Id. at 346. The court reasoned that if the broker-dealer's interpretation were accepted the scope of the contract would be absurdly broad and produce erratic results. Id.

Plaintiffs submit that the arbitration provisions of the Wexford Client Margin Agreement are unintelligible to a layman and equally, if not more, ambiguous to that contained in the Stone case.[2] See Defendant's Exhibits 1&2, ¶14 ("*The undersigned agree, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or*

---

[2] See Foufas v. Dru, 319 F.3d 284 (7th Cir. 2003) (Ambiguous contracts should be read to make sense of the parties' economic relations. That rule applies to arbitration agreements).

*breach of this or any other agreements between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.*") The language is so broad that one cannot define the contours of its scope in a manner which is consistent with the overall purpose of the margin agreement, that, in paragraphs 2 through 10, only relate to margin trading in which Wexford is the clearing agent. Accordingly, Plaintiffs request the court make common sense of the agreement and reign in the sweeping arbitration provisions in favor of a reasonable construction that the arbitration provisions related only to disputes respecting violations of the margin agreement between Plaintiffs and Wexford.

### C. The Margin Agreements Arbitration Provision Does Not Comply with the National Association of Securities Dealers ("NASD") Regulations.

Bangor Securities and Defendant Hobbs are members of the NASD. *Complaint ¶¶5,8.* As members, they are required to comply with the NASD rules and regulations. Paul Revere Variable Annuity Ins. Co. v. Kirschofer, 226 F.3d 15, 19 (C.A.1 Mass. 2000)(A NASD registrant is obligated to comply with the rules of the NASD organization) citing Sevs v. John Nuveen & Co., 146 F.3d 175, 187 (3d. Cir. 1988). Looking at the NASD rules governing arbitration agreements reveals that the Client Margin Agreement is not in compliance with the explicit provisions contained within the rules. When arbitration agreements fail to comply with the requirements established by the NASD to regulate the form and content of arbitration agreements, the arbitration agreements are invalid. Felkner v. Dean Witter Reynolds, Inc., 800 F.2d 1466, 1468 (9th Cir. 1986); citing Smoky Greenhaw Cotton Co., v. Merrill Lynch, Pierce, Fenner &Smith, Inc., 720 F.2d 1446, 1450-51 (5th Cir 1983).

The NASD has issued specific requirements with respect to arbitration clauses contained within brokerage agreements. Plaintiffs have alleged that Defendants have violated the provisions of NASD Rule 3110. *Complaint ¶ 58*. The provisions relevant to the determination of the issue before the court contained within NASD Rule 3110, "Customer Account Information" are as follows:

**(f) Requirements When Using Predispute Arbitration Agreements With Customers**

(1) Any predispute arbitration clause shall be highlighted and shall be immediately preceded by the following disclosure language (printed in outline form as set forth herein) which shall also be highlighted:

(A) Arbitration is final and binding on the parties.

(B) The parties are waiving their right to seek remedies in court, including the right to jury trial.

(C) Pre-arbitration discovery is generally more limited than and different from court proceedings.

(D) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(2) Immediately preceding the signature line, there shall be a statement which shall be highlighted that the agreement contains a predispute arbitration clause. The statement shall also indicate at what page and paragraph the arbitration clause is located.

(3) A copy of the agreement containing any such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document.

(4) No agreement shall include any condition which limits or contradicts the rules of any self-regulatory organization or limits the ability of a party to file any claim in arbitration or limits the ability of the arbitrators to make any award.

(5) The requirements of subparagraphs (1) through (4) shall apply only to new agreements signed by an existing or new customer of a member after September 7, 1989.

>  - NASD Manual Rule IM-3110 (Westlaw cite) or go online to http://cchwallstreet.com/NASD/NASD_Rules

The Client Margin Agreement violates the regulatory requirements in at least two ways. Pursuant to Rule IM-3110(f)(1) the arbitration language contained within a brokerage agreement must be highlighted. Pursuant to Rule IM-

3110(f)(2), immediately preceding the signature line in a brokerage agreement, there shall be a statement which shall be highlighted that the agreement contains a pre-dispute arbitration clause. None of the language relating to arbitration is highlighted within Wexford's Client Margin Agreement. Secondly, Rule IM-3110(f)(2), requires that the statement preceding the signature line shall also indicate at what page and paragraph the arbitration clause is contained. The Wexford Margin Agreement refers to a pre-dispute arbitration clause at page 1 at paragraph 13. There is no paragraph 13 in either Defendant's Exhibit 1 or 2.

The Client Margin Agreement fails to conform with the explicit requirements imposed by NASD Rule 3110 which are designed to ensure that signatories to brokerage agreements are put on actual notice that they are waiving their right to a jury trail, significantly limiting their rights to discovery and meaningful appellate review. There is no way to distinguish the arbitration language from the remainder of the fine print contained within the Margin Agreement. The failure of the agreement to conform with the regulatory requirements makes it invalid as a matter of law.

### D. Triable Issues of Fact Preclude Dismissal or a Stay Pending Arbitration.

The court may determine as a matter of law that the agreement does not apply to Bangor Securities or submit the issue to a jury for its determination pursuant to 9 U.S.C. § 4 (2000). The federal arbitration statute specifically commands that in non-admiralty cases, a jury must be used to decide the validity of the agreement if it is disputed; Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126,

129-30 (2d Cir.1997); Coady v. Ashcraft & Gerel, 223 F.3d 1 (1st Cir. 2000). As discussed herein and as evidenced within Plaintiffs Complaint, there are significant factual issues with respect to the operation and the scope of the arbitration provisions upon which Defendants rely.  A reasonable juror could conclude that the Client Margin Agreements do not operate to compel arbitration between Plaintiffs and Bangor Securities under the circumstances of this case.

Plaintiffs hereby a demand a jury trial on the limited issue of whether or not (1) the arbitration provisions within the Client Margin Agreement between Wexford and the Boulets applies to extend rights to Bangor Securities; (2) if rights are extended to Bangor Securities, whether the arbitration clause extends to transactions in which Wexford was not the clearing broker and/or to Plaintiffs' non-margin accounts; (3) whether the Client Margin Agreement arbitration provisions complied with the NASD rules and regulations and are therefore valid/invalid; (4) whether the Boulets ever intended to arbitrate with Bangor Securities *all* of the claims contained within their Complaint; (5) whether Defendants fraudulently induced Plaintiffs into signing the Client Margin Agreements; and (6) whether Defendants breached their fiduciary duties in failing to advise Plaintiffs that by signing the margin agreements they would be waiving their rights under the Seventh Amendment of the United States Constitution.

WHEREFORE, Plaintiffs respectfully requests that this court Deny Defendant's Motion to Dismiss/ Stay Pending Arbitration, order an evidentiary
12

hearing on the issues and submit the matters discussed herein for determination by a jury.

Respectfully submitted.

Dated at Portland, Maine this 29th day of March, 2004.

      /s/ Daniel G. Lilley_____
Daniel G. Lilley, Bar No. 1870
dlilley@danlilley.com

      /s/ Christian Foster_____
Christian Foster, Bar No. 9086
cfoster@danlilley.com

Attorneys for the Plaintiff
**LAW OFFICES OF DANIEL G. LILLEY, P.A.**
39 Portland Pier
P.O. Box 4803
Portland, Maine 04112-4803
(207) 774-6206

**CERTIFICATE OF SERVICE**

On this date, I do certify that I did cause service of the within Plaintiffs' Opposition to Bangor Securities, Inc.'s Motion to Dismiss/Stay Action and Compel Arbitration with Incorporated Memorandum of Law upon counsel of record in this matter via the United States District Court ECF system:

Daniel J. Mitchell
Bernstein Shur Sawyer & Nelson
P O Box 9729
Portland, ME 04104-5029

*This document has been filed with the United States District Court for the District of Maine electronically and is available for viewing and downloading from the ECF system.*

Dated: March 29, 2004

/s/ Christian C. Foster
Christian C. Foster, Esq.
Bar No. 9086

Attorneys for the Plaintiffs
**DANIEL G. LILLEY LAW OFFICES, P.A.**
39 Portland Pier
P.O. Box 4803
Portland, ME 04112-4803
cfoster@danlilley.com
(207) 774-6206